[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties, who had known each other since their early school days, were married in Ipswich, Massachusetts, on May 24, 1975. They have been living separate and apart since June of 1999, when the defendant husband ("husband") left the family home. Two children, a son and a daughter, were born to the plaintiff wife ("wife"), both of whom have reached their majority. At the time the case was instituted in September 1999, the wife was living in a rental unit in Norwalk, Connecticut. She currently lives in East Gloucester, Massachusetts, where she has rented since November 2000. The husband currently resides in Stamford, Connecticut, in a unit provided by his employer.
The wife is 48 years old and a high school graduate with one year of college. She is currently unemployed and receives Social Security Disability along with Medicare and nets about $521.00 per month. During the latter part of the marriage, from 1987 to 1996, she worked as a real estate broker in the Westport area with a concentration in high-end homes. She averaged approximately $50,000 per year. Her latest job ended in April 1996 when her employer suggested that she leave. She was hospitalized briefly at that time. In 1994, she was diagnosed with a form of bipolar disorder called "rapid cycle," resulting in sudden, dramatic manifestations, along with a mixed personality disorder akin to schizophrenia. These problems are triggered during periods of stress. She takes a variety of prescription drugs for which there is an out-of-pocket expense of $400.00 per month. Compounding her emotional problems is a degenerative condition in her back, stemming first from a back injury at the age of 12, followed by an auto accident in 1970, with three successive surgeries, followed by yet another auto accident three weeks following her last surgery in 1993. She had knee surgery following that accident. For these ailments she takes another batch of medications, which carry an additional out-of-pocket cost of $300.00 per month. Medicare does not fully cover all of her prescriptions, and she is forced to choose among the various medications. Among other things, she suffers from short-term memory loss and has difficulty concentrating. of more CT Page 12500 significance, it was the 1993 accident which was the likely trigger for the aggravation of her bipolar disorder. As part of her therapy, she told the court that she walks about two miles a day. It is her ambition to run an herbal healing shop (the husband referred to it as a "Witch shop") on the North Shore. She testified that it is hard for her to work for somebody, as she "has difficulty getting up some days."
The husband is 55 years old and a high school graduate with a partial year of college. He described his health as "fair," but testified that there was "nothing to prevent his working full time." He was employed throughout the marriage in a succession of jobs throughout New England. He achieved a high degree of financial success when he associated himself with Snap-On Tools for twenty years, first as an independent franchisee and later as an employee. As an example, the evidence disclosed that for the years 1991 and 1992, he earned $92,031.73 and $86,897.34 respectively. The husband left Snap-On Tools in 1997, and the wife testified that she was unaware of her husband's decision to do so for some time after the fact. He elected to take his pension which pays him $1,246.00 per month. Sometime before he left Snap-On Tools, the husband invested his time and at least $100,000 in family monies in what turned out to be an incredibly bad business venture, Ellis Ambulance Co. in the Bronx, New York, which later went bankrupt. After a succession of odd jobs, he found his current position as a manager of the Stamford property of Storage USA. As such, he is paid a weekly wage of $398.00, together with rent-free housing, including utilities, equivalent to $1,200.00 per month. He is also entitled to a modest bonus depending upon the acquisition of new business. Last year, he received approximately $3,000.00. He testified that in spite of the "limited opportunities," he wants to stay with Storage USA. He further testified that he had made a "conscious decision" to take his present job during the pendency of this case. The court believes that he is simply biding his time, and that he is grossly underemployed. His resume clearly demonstrates his drive and ability, as well as a nearly unbroken string of success during his association with Snap-On Tools.
Most of what the parties were able to accumulate during the marriage is now gone. The husband testified that he brought about $35,000.00 to the marriage which was invested in their first home which, when sold, he said was a break-even proposition. A succession of moves brought the family to Signal Hill Road, Wilton, but that, too, was sold under the threat of foreclosure. After the payment of expenses and debts, all that remains is a small escrow of approximately $25,000, against which the State of Connecticut has a lien of about $10,000. Following her accident, the wife received a net settlement of $176,000, out of which she paid back mortgage payments of $30,000, and bought the boat and cars for herself CT Page 12501 and the two children. The husband claims that the boat was a gift to him. Other than her car (which requires major work) and the boat, nothing remains of this sum. They have a building lot in Florida, and, as stated before, the husband has a pension from Snap-On Tools which is currently in pay status. Two major debts remain, a tax bill to the State of Connecticut of approximately $10,500, and a judgment in the amount of approximately $7,000.00 in favor of the wife's former landlord in Norwalk, R. G. Industries. Still lurking is a potential income tax liability for prior tax years for which no returns were filed.
As to the cause of the breakdown of the marriage, the husband claims that the wife's drinking and recreational drug use throughout the marriage was the primary cause, and moreover, he contends was the principal reason why he ultimately left Snap-On Tools. This is simply not credible. In particular, he points to an incident at a company function in 1984, when the wife allegedly invited his boss to do drugs with her. The court notes that he continued his employment for many years after, even winning awards for his performance. In addition, he accused the wife of infidelity with several different persons. However, with at least two of those persons, during the examination by his own counsel, he admitted to having participated in these liaisons in a ménage átrois. For her part, the wife testified to the husband's numerous infidelities, as a result of the most recent of which he left the marital home. Both parties have made very poor life choices, in particular with regard to their sexual practices, as well as the wife's use of alcohol and recreational drugs, if such allegations are to be believed. The court does not judge them for this behavior, except to comment that they have reaped what they have sown in the type of marital relationship they have chosen — They have certainly not forged the bond necessary to weather their "tempests tossed" recent lives. Those were their free choices. However, the most compelling evidence before the court was the husband's callous abandonment of the wife both financially and emotionally following her diagnosis and later physical injuries. The wife had no free choice regarding the onset of her illness and injuries — Had she such a choice, it is hard to believe she would have freely chosen this cross to bear, especially in light of her experiences over the past eight years. The husband claims that he "couldn't help her anymore." However, his deceit and secrecy in his relationship with his most recent lover, as well as his reckless investment of dwindling family funds in a risky venture, under the circumstances, shock the conscience of the court. He chose his auto insurance over medical insurance at a time when his wife was in grave need. Moreover, his conscious choice to change jobs to a position well below his obvious talents, resulted in his failure to provide adequate support, from which flowed her eviction and the judgment against her, among other things. If that wasn't enough, to CT Page 12502 add insult to injury, in June 2001, he sued her in Small Claims and recovered a judgment of $2,500.00!
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-40, 46b-51, 46b-62, 46b-63, 46b-81, and 46b-82
of the Connecticut General Statutes, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint are proven and true.
3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown. The court finds that the husband's more recent conduct, in particular, his failure to provide financial and emotional support to the wife, was a significant cause of the breakdown.
4. That the evidence before the court as to the wife's mental and physical limitations is both credible and compelling; that the wife, given her present needs, has a very limited earning capacity, at or below that of an entry-level clerk or sales person on a part-time basis; and that it is equitable and appropriate that she receive lifetime alimony.
5. That the evidence before the court demonstrates that the husband is by his choice significantly underemployed; that he has a demonstrated earning capacity of at least $75,000 per annum; and that it is equitable and appropriate that the court take this into consideration when entering its financial orders.
6. That both parties made significant financial contributions to the acquisition of the marital assets throughout the marriage; that both parties have made some extremely unwise use of marital assets at a time of financial crisis which has resulted in the virtual wastage of same; that, in particular, the court has taken into consideration the husband's use of marital funds for investment in Ellis Ambulance, as well as the wife's purchase of a boat and several automobiles from the proceeds of her personal injury settlement, as prime examples thereof; and that the husband's change of jobs placed undue strain on the family finances and resulted in the wife's use of savings to meet her needs.
7. That based upon the evidence before the court, the wife's eviction CT Page 12503 and the subsequent judgment against her were a direct consequence of the husband's failure to provide adequate support; and that it is equitable and appropriate that both parties be responsible for the judgment against the wife by her former landlord.
8. That both parties bear some responsibility for the outstanding tax liability to the State of Connecticut.
9. That according to the testimony of the husband, he has maintained a policy of insurance on his life with New York Life for the benefit of his wife; that he did not list same on his financial affidavit and does not know the face amount of same and whether or not there is a loan against same; and that he has not paid any premiums on same for the past two years.
10. That the husband currently receives a pension from Snap-On Tools; that said pension was earned during the marriage of the parties; that the pension is a marital asset; that the wife has an equitable right to receive 50% of the benefit; that the husband has made an election as to receive same during the marriage, however, no credible evidence was introduced before the court indicating, inter alia, whether the election was a standard "joint and survivor annuity" as provided under federal law or whether or not the plan is "qualified"; that the court assumes that the election is irrevocable now that the pension is "in pay" and that it lacks jurisdiction to modify same by QDRO or otherwise; and that it is equitable and appropriate that the court take this into account in entering its orders and reserve jurisdiction as to any issues which may arise in connection therewith.
 ORDER
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. Commencing October 1, 2002, and weekly thereafter, the husband shall pay to the wife the sum of $250.00 as and for periodic alimony, until the death of either party or the remarriage of the wife, whichever shall sooner occur. The wife shall be entitled to earn up to $15,000 gross per annum from employment before the husband shall be entitled to a modification of his alimony order pursuant to this paragraph based upon her income. In the event that the wife is self-employed, gross income shall be defined as gross receipts less the cost of goods and services and reasonable business expenses. CT Page 12504
3. Commencing October 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $623.00, which sum represents the equivalent of one-half the value of the Snap-On Pension, as and for additional periodic alimony, until the death of either party, whichever shall sooner occur. Pursuant to General Statutes § 46b-86 (a), this payment is NONMODIFIABLE by the husband for any reason other than the death of either party.
4. The wife shall be entitled to receive the balance of the proceeds from the sale of the marital home at Signal Hill Road, Wilton, together with any interest thereon, currently being held in escrow by her attorney, free and clear of any claims by the husband.
5. Personal property shall be divided as follows:
A. The furnishings from the former marital home shall belong to the wife free and clear of any claims by the husband. The husband shall be entitled to any clothing or personal effects currently in the wife's possession, if any. In the event that the parties are unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
B. Each party shall be entitled to keep the automobile which they are currently driving, whether owned or leased, free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
C. Except as otherwise set forth herein, each party shall be entitled to keep their respective savings, checking, and money market accounts free and clear of any claims by the other.
D. The wife shall be entitled to the 1979 Pen Yan boat free and clear of any claims by the husband. The husband shall cooperate with the wife regarding the execution of any documentation necessary to transfer and/or register same.
6. Each party shall be responsible for the cost of their own medical insurance and medical care.
7. As to the jointly-owned real estate at Yalaha, Florida, the parties shall list same for sale no later than November 1, 2002, with a mutually acceptable broker who is a member of the Multiple Listing Service or other similar organization, familiar with real estate values in the CT Page 12505 Yalaha, Florida area, at an agreed upon asking price. If the parties are unable to agree upon a broker, each shall choose a broker who, in turn shall pick a third broker, and the listing price shall be the average of all three brokers. Unless the parties shall otherwise agree, they shall accept any bona fide offer without unusual conditions, which is within 5% of the listing price. Upon sale of the property, from the proceeds shall be paid the customary and ordinary costs associated with a sale of real estate, including broker and attorney fees, conveyance taxes, any mortgages and liens, and the balance due and owing on the R. G. Industries judgment. After the payment of these sums, the net proceeds shall be divided 50% to the husband and 50% to the wife. The foregoing notwithstanding, prior to any distribution, to the wife, the husband shall receive from her share the sum of $2,500.00 less any sums paid by her on account of the Small Claims judgment.
8. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon. The foregoing notwithstanding, the judgment in the matter of R. G. Industries v. Ingwersen in the approximate amount of $7,000.00 in favor of the wife's former landlord, shall be paid from the net proceeds from the sale of the Florida property as set forth above, and any portion of same not satisfied from said proceeds shall be the sole responsibility of the husband, and he shall indemnify and hold the wife harmless from any further liability or claims thereunder. In addition, both parties shall be liable for the debt to the State of Connecticut in the approximate amount of $10,500 as is evidenced by a tax lien, 65% by the husband and 35% by the wife. The husband shall have the sole responsibility for any additional state and federal income taxes, together with interest and penalties thereon, attributable to the period prior to the separation of the parties. Furthermore, the husband shall indemnify and hold the wife harmless, including a reasonable attorney's fee, in the event that the husband's share of any of the foregoing obligations are paid from any funds held by or for the benefit of the wife.
9. The husband shall maintain and pay the premiums for the existing life insurance with New York Life, and shall name the wife irrevocable beneficiary thereof for so long as he has an obligation to pay alimony under the terms of this decree. He shall not further encumber the policy with any additional loan and. shall keep current any principal and interest payments thereon. The court considers the maintenance of the policy to be in the nature of spousal support shall retain jurisdiction with regard to any issues that may arise in connection therewith. CT Page 12506
10. Each party shall be responsible for their respective attorney's fees and costs incurred in connection with this action.
11. The husband shall provide the wife with a copy of his pension election form as well as a Summary Plan Description of benefits and options thereunder within thirty (30) from the date of this Order, and the court hereby reserves jurisdiction as to any issues which may arise in connection therewith.
12. The Court hereby orders an Immediate Wage Withholding Order pursuant to General Statutes § 52-362 in order to secure the payment of the alimony order.
THE COURT
SHAY, J. CT Page 12507